FILED

2012 SEP -4 AM 10: 19

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY ____________

Juan Hong, (CA SBN 234046)
Law Office of Juan Hong, A Law Corp.
4199 Campus Drive, Suite 550
Irvine, CA 92612

Phone: (949) 509-6505
Fax: (949) 335-6647
Email: jhong48@gmail.com

Attorney for Plaintiff Calop Business Systems, Inc.

United States District Court
For the Central District of California
Western Division

CALOP BUSINESS SYSTEMS, INC.

Plaintiff,

vs.

CITY OF LOS ANGELES, and DOES 1-10,

Defendants,

Case No: CV12-7542-MMM (RZx)

**Complaint on the Due Process, the ERISA, the ADA, the RLA, and the STATE LAW**

1. Plaintiff Calop Business Systems, Inc. ("CALOP") brings an action for injunctive and declaratory relief based on the Railway Labor Act ("RLA"), 45 U.S.C. §151 et. seq., the Airline Deregulation Act ("ADA"), 49 U.S.C. §41713(b)(1), the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1144(a). Plaintiff brings an action in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments and Article 1, Section 7 of the California Constitution. Plaintiff brings claims for damages based upon 42 U.S.C. §1983 in violation of the RLA preemption, the ADA preemption, the ERISA preemption, and the Due Process Clauses of the Fifth and Fourteenth Amendments against City of Los Angeles and DOES 1-10. Plaintiff brings a state claim on behalf of itself, and the general public pursuant to California Labor Code §§90.5(a), 223, and 2810 against City of Los Angeles.

JURISDICTION

2. This action arises under 28 U.S.C. §§1331.

3. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201, 2202, Federal Rules of Civil Procedure 57 and 65.

4. This Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367 because that claim is so related to Plaintiff's federal law claims that it forms part of the same case or controversy under Article III of the United States Constitution.

VENUE

5. Venue is proper in this jurisdictional district pursuant to 28 U.S.C. §1391(b) and (c) because City of Los Angeles has its office in this district.

LWO ENACTMENT AND ENFORCEMENT

6. Through the Living Wage Ordinance ("LWO") the City of Los Angeles intends to require service contractors to provide a minimum level of compensation that will improve the level of services rendered to and for the City.

7. Effective July 1, 2009, together with all previous annual adjustments as provided by the LWO, the rates are ten dollars and thirty cents ($10.30) per hour with health benefits or, if health benefits are not provided, then fourteen dollars and eighty cents ($14.80) per hour for Airport Employees and eleven dollars and fifty-five cents ($11.55) per hour for all other Employees.

8. The health benefits consist of the payment of at least four dollars and fifty cents ($4.50) per hour by Airport Employers and at least one dollar and twenty-five cents ($1.25) per hour by all other Employers towards the provision of health care benefits for Employees and their dependents.

9. The LWO includes the Supersession Clause by Collective Bargaining Agreement providing that: "Parties subject to this article may by collective bargaining agreement provide that such agreement shall supersede the requirements of this article." The LWO does not apply to those employers who have collective bargaining agreements with their employees when an employer and its employees exempt themselves from the LWO by providing in writing that the collective bargaining agreement supersedes the LWO.

10. The LWO requires employers to pay covered employees a "living wage" which must be no less than the minimum established in the LWO. If the employer offers no health benefits, the employer must pay the employee at least the full cash living wage rate which is currently comprised of the minimum compensation of $10.30 per hour plus the $4.50 per hour that would be allocated towards the provision of healthcare benefits as prescribed by the Health Benefits section contained in the Los Angeles Administrative Code ("LAAC"), Section 10.37.3.

11. The LWO compensated and uncompensated days off requirements are minimum requirements. There is no limit should an employer wish to allow more than the minimum required by the LWO.

12. According to LAAC Section 10.37.3 "Airport Employees cannot waive the health benefits offered by an Airport Employer when the Airport Employer does not require an out-of-pocket contribution by the Airport Employee."

13. An employer may elect to pay employees $14.80 per hour instead of providing health benefits.

14. An employer must provide at least $4.50 per hour per employee towards health benefits. An employer may provide a health benefit of less than $4.50/hr to cover employees, whether or not they have defendants. However, any differential in cost per employee must be added to the employee's hourly rate of pay.

15. Employers may delay providing health benefits to new hires until the employee completes a probation or training type period. In the case of new hires, an employer wishing to delay the provision of health benefits, until the employee has completed a probationary or

training period may do so; however, it must pay the full cash wage of $14.80 per hour until the employee is extended health benefits. At the time that the employer provides the health benefits, it may reduce the base wage accordingly.

16. Employers subject to the LWO are required to comply with the reporting requirements as stipulated in the LWO Regulation Employer Requirements.

17. The Office of Contract Compliance (OCC) has been designated by the Los Angeles City Council as the administrative agency responsible for monitoring and enforcing the Living Wage Ordinance.

18. At least once every three years, the Office of Administrative and Research Services reviews the health benefit payment by Airport Employers to determine whether the payment accurately reflects the cost of health care.

19. The City of Los Angeles determines compliance based on the monthly premiums for health benefits paid by the employer which is then divided by the number of hours worked by each employee to determine if the employer has met the $4.50 per hour rate.

<u>PLAINTIFF CALOP VERSUS SERVICE EMPLOYEE INTERNATIONAL UNION ("SEIU")</u>

20. CALOP receives subcontract security and passenger services work from several airlines operating out of the Tom Bradley Terminal at the Los Angeles International Airport ("LAX"). Those airlines, which include Asiana Airlines, Singapore Airlines, EVA Air, Air Tahiti Nui, China Eastern, China Southern, Japan Airlines, Philippine Airlines, Quantas Airways, Thai Airways, and Cathay Pacific, are common carriers by air engaged in interstate or foreign commerce within the meaning of 45 U.S.C. 181. The work that CALOP's employees perform for those carriers is work that has traditionally been performed by employees for the carriers themselves. Those airline carriers exercise substantial control over the operations, wages, and working conditions at CALOP. Accordingly, CALOP is also a carrier within the meaning of the Railway Labor Act, 45 U.S.C.§181.

21. CALOP's subcontracts from air carriers include Guard For Warehouse and Cargo Warehouse Screener, Guard For Aircraft, Passenger Service Security Agent, Baggage Handling Agent, TUB Operation Agent, Catering Screener Agent and LAX Guard for Aircraft.

22. CALOP provides airline ground supports to the air carriers from its sole facility located at the Los Angeles International Airport. CALOP is directly and/or indirectly controlled by the air carriers engaged in interstate or foreign commerce. The air carriers for which CALOP performs services have the authority to effectively recommend discipline, and to directly supervise the CALOP employees' work. Employees of CALOP and the air carriers interact on a day-to-day basis. CALOP is controlled by the airlines. Therefore, CALOP is subject to the Railway Labor Act ("RLA").

23. On information and belief, Service Employee International Union Local 1877 ("SEIU") is a powerful organization that has relied heavily upon top-down organizing as a model for growing its membership. A corporate campaign is multifaceted attack against an employer aimed at pressuring the employer to voluntarily recognize SEIU as the bargaining representatives of its employees. This is a departure from traditional union organizing models, in which the union conducts a grass-roots efforts to gain employee support, followed by a secret-ballot election conducted by the National Mediation Board.

24. On May 28, 2009, CALOP and SEIU entered into a Cardcheck Election Agreement.

25. In December 2009, CALOP executed the Voluntary Union Recognition Agreement for SEIU, whereby CALOP recognized SEIU as the representative of its employees. However, SEIU was not certified by National Mediation Board and consequently, CALOP was not and is not obligated to treat SEIU as its employees' collective bargaining representative.

26. Before January 19, 2010, the Living Wage Ordinance ("LWO") required airport employers like CALOP to pay a minimum wage of $10.30 per hour plus a minimum healthcare contribution of $1.25 per hour. Effective January 19, 2010, the Living Wage Ordinance required LAX employers to pay a minimum wage of $10.30 per hour plus a minimum healthcare contribution of $4.50 per hour. The healthcare contribution may be provided in the form of

healthcare benefits or it may be added to the regular wage. If a company's employees are not subject to a union contract, Collective Bargaining Agreement ("CBA"), it is the company's sole discretion whether to provide the $4.50 per hour healthcare contribution as a cash wage, or as healthcare benefits.

27. On February 1, 2010, SEIU and CALOP entered into the Agreement of Wage and Health Benefit Package. SEIU was represented by Hayes Witt ("WITT"), a SEIU organizer. WITT told CALOP principals that CALOP Business Systems, Inc. was waived to comply with the Living Wage Ordinance from January 19, 2010, to January 31, 2010.

28. WITT, as a representative speaker for CALOP's employees in wage, benefit, and working conditions, misrepresented that the CALOP employees approved the diversion of the health benefit portion of the Living Wage to the SEIU health trust fund from January 19, 2010, to January 31, 2010. WITT misrepresented to the effect that, instead of CALOP's employees receiving the health benefit portion directly from CALOP, the CALOP employees approved CALOP to send their health benefit portion to the SEIU trust fund. CALOP did not know that WITT misrepresented.

29. After CALOP employees learned that their health benefit portion of the Living Wage was sent to the SEIU Trust Fund without their approval and ratification of the Agreement of Wage and Health Benefit Package, they became furious about the WITT's misrepresentation.

30. SEIU had misled the CALOP employees that "CALOP pays 100% of premium," by concealing that the CALOP employees pay 100% of health insurance premium from their health benefit portion of the living wage.

31. On February 26, 2010, ninety seven (97) employees signed the Decertification Petition.

32. For February and March of 2010, SEIU charged $520 per month to each employee regardless of his or her working hour status. SEIU asked CALOP to pay $520 per month for a full time employee working 40 hours per week. SEIU required CALOP to pay $520 per month for a half time employee working 20 hours per week.

33. The Agreement of Wage and Health Benefit Package required CALOP to use the SEIU sponsored California Service Employees Health and Welfare Trust (the "SEIU Health and Welfare Trust"). This requirement forced every CALOP employee to be provided with full family healthcare whether they actually need only single coverage solely for themselves or no coverage at all.

34. On April 5, 2010, CALOP sent SEIU a letter purporting to withdraw recognition from SEIU. CALOP sent the employees a letter stating in pertinent part that: "As announced on 4/05/10, (1) Total $14.80 hourly wage including medical benefit will be paid ...."

35. In or about June 2010, upon SEIU's incitement, five CALOP employees filed their complaint with the City of Los Angeles with the allegation of CALOP's violation of the LWO from January 19, 2010, to January 31, 2010. To CALOP, the SEIU's incitement of the five CALOP employees is nothing but an unlawful labor practice by SEIU. WITT misrepresented to CALOP that the CALOP employees approved CALOP to send their health benefit portion from January 19, 2010, to January 31, 2010, to the SEIU trust fund.

36. On October 21, 2010, Sophy Tzeng, the EEO Enforcement Section of the City of Los Angeles, sent CALOP a letter stating in pertinent part: "The purpose of this notice is to inform you that our Office has completed the investigation of Calop." "As a result of our investigation, OCC determined that CalOp was not in compliance with the LWO from the period of January 19, 2010 to February 1, 2010. CalOp was paying wages of $11.55 per hour and not providing health benefits ......... The Living Wage Ordinance requires Airport Employers and their subcontractors to pay covered employees a "Living Wage." The Living Wage comprises of a minimum compensation of $10.30/hr plus $4.50 per hour towards the provision of healthcare benefits. If an employer does not offer healthcare benefits, then the Living Wage Rate to be paid is $14.80/hr. The LWO also requires Airport Employers and their subcontractors to provide covered employees at least twelve (12) compensated days off and ten (10) uncompensated day off per year."

COLLECTIVE BARGAINING AGREEMENT BETWEEN AVIATION SAFEGUARDS AND SEIU

37. On information and belief, SEIU Local 1877 represented employees of Aviation Safeguards for the purpose of collective bargaining. Aviation Safeguards is principally engaged in the business of providing contract security services, including security for airlines, aircraft, passengers and cargo; baggage screening; wheelchair escort services; and skycap services.

38. On information and belief, in or around October 2008, SEIU and Aviation Safeguard entered a collective bargaining agreement ("CBA" or "Agreement"). A copy of that Agreement is attached as Exhibit 1 to the First Amended Complaint in Case No. C12-04032 LB, Herrera v. Command Security Corp., d/b/a Aviation Safeguards, a case pending in the United States District Court for the Northern District of California.

39. On information and belief, the Agreement covered Aviation Safeguards' service employees working at Los Angeles International Airport ("LAX")

40. On information and belief, on December 30, 2011, Aviation Safeguards sent SEIU a letter purporting to withdraw recognition from SEIU.

41. The Agreement provides in pertinent part: "The following applies to part-time security officers who are being paid the full cash wage and no benefits as of the effective date of this agreement… All of the employees covered by this section are eligible for health benefits."

42. On information and belief, the cost for Health Benefits was $585 per month effective 2/1/2010.

43. The Agreement section pertaining to Healthcare has required Aviation Safeguards to use the SEIU sponsored California Service Employees Health and Welfare Trust (the "SEIU Health and Welfare Trust"). This requirement has forced every employee to be provided with full family healthcare whether they actually need only single coverage solely for themselves or no coverage at all.

44. The Agreement provides that a new employee is paid $9.00 from 1/19/2010 to 6/30/2012, and $9.50 from 7/01/2012 to 11/30/2012. A new employee received $9.00 per hour without the Health Benefits for six months. Aviation Safeguards provides a health benefit of less than $4.50/hr to covered employees. However, any differential in cost per employee was not added to the employee's hourly rate of pay.

45. On information and belief, Aviation Safeguard was on notice of its obligation under the LWO and certified to the City its intention to comply with the LWO, Aviation Safeguard did not pay its employees at the LWO rate.

<u>FIRST CAUSE OF ACTION FOR VIOLATION OF DUE PROCESS</u>

46. Plaintiff CALOP incorporates and realleges paragraphs 1 through 45 as set forth in full herein.

47. The LWO is void for vagueness under the due process clause of the Fourteenth Amendment of the Federal Constitution, and Article 1, Section 7 of the California Constitution. The LWO does not give fair notice of the practice to be avoided. The LWO does not provide reasonably adequate standards to guide enforcement.

48. The LWO supersession clause delegates the City of Los Angeles's police power to employers and unions. The private parties, employers and unions, determine wages and benefits under no guiding principle provided by the City.

49. The LWO is not sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions: whether the LWO supersession clause allows a collective bargaining agreement to set wages at a rate lower than the wage set by the LWO: whether the LWO could be undercut by a collective bargaining agreement: whether the City of Los Angeles could participate in the collective bargaining process to approve below the LWO.

50. Whether the LWO is so vague and ambiguous that it offends due process, and how the terms of the LWO should be interpreted, are legal questions for the court to decide.

51. We use the term "minimum wage" to mean the minimum permissible wage under applicable state and local law.

52. Minimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that the subject of the RLA.

53. The ordinances that set true minimum labor standards must not be related in any way to processes of bargaining or self-organization. The minimum labor standards affect union and non-union employees equally, and neither encourage nor discourage the collective-bargaining processes. However, the LWO grants employers of unionized employees a power that non-union employers lack - the ability to pay employees wages below the level set by the LWO.

54. The LWO wage and health benefits cannot be minimum legal requirements if lower wage rates can be negotiated by unionized employers with the approval of the City. A minimum cannot be undercut.

<u>SECOND CAUSE OF ACTION FOR VIOLATION OF ERISA</u>

55. Plaintiff CALOP incorporates and realleges paragraphs 1 through 45 as set forth in full herein.

56. ERISA preempts any and all state laws insofar as they relate to any employee benefit plan covered by the ERISA. 29 U.S.C. §1144(a)

57. To make a commitment systematically to pay health benefits under the Living Wage Ordinance, Plaintiff CALOP undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, monitoring the availability of funds for benefit payments, and keeping appropriate records.

58. The Living Wage Ordinance requires CALOP to spend a specific percentage of total wages on health benefits for its employees.

59. The LWO requires CALOP to provide its employees at least twelve (12) compensated days off and ten (10) uncompensated day off per year.

60. The LWO imposes employee health or welfare mandates on CALOP.

61. The LWO requires CALOP to file reports with the City of Los Angeles detailing health benefits expenditures and payroll records. The LWO has an obvious connection with employee benefit plans and so is preempted by ERISA.

62. The LWO refers to ERISA plans. The purpose and effect of the LWO interfere with Congress's objectives in enacting the ERISA.

THIRD CAUSE OF ACTION FOR VIOLATION OF ADA

63. Plaintiff CALOP incorporates and realleges paragraphs 1 through 45 as set forth in full herein.

64. The City of Los Angeles enacts or enforces the LWO in violation of the ADA because the LWO has the force and effect of law related to a price, route, or service of an air carrier. 49 U.S.C. §41713(b)(1)

65. The LWO, which essentially increases the price of labor, impacts an air carrier's prices, routes, or services.

66. The LWO is preempted by the Airline Deregulation Act ("ADA").

FOURTH CAUSE OF ACTION FOR VIOLATION OF RLA

67. Plaintiff CALOP incorporates and realleges paragraphs 1 through 45 as set forth in full herein.

68. The supersession clause of the LWO encourages or discourages the collective bargaining processes that are the subject of the RLA.

69. The supersession clause allows a collective bargaining agreement to set wages at a rate higher or lower than the wage set by the LWO.

70. The LWO supersession clause penalizes employees who have chosen to join a union by preventing them from benefiting from the LWO imposing minimal standards on nonunion employers.

71. The LWO could be undercut by a collective bargaining agreement and the City of Los Angeles could participate in the collective bargaining process to approve below the LWO. The right to bargaining collectively is, therefore, affected by the LWO.

72. The LWO affects the economic powers of employers and unions in connection with collective bargaining.

73. For the LWO supersession clause, legitimate concerns exist that employees and unions might focus their efforts to petition the City of Los Angeles to pass the LWO with onerous terms that business owners are virtually forced to enter into a collective bargaining agreement in order to pay lower wages.

74. The LWO impermissibly encourages collective bargaining by providing an incentive for unionization. A legitimate concern exists that a contractor executes a collective bargaining agreement to avoid California Labor Code section 2810.

75. The LWO applies unequally to unionized and nonunionized employees.

76. The LWO does not protect CALOP who complies with the LWO from unionized-employers who gain a competitive advantage by paying a lower wage and health benefits than those designated by the LWO.

FIFTH CAUSE OF ACTION FOR VIOLATION OF THE STATE LAW

77. Plaintiff CALOP incorporates and realleges paragraphs 1 through 45 as set forth in full herein.

78. This claim is brought by the Plaintiff on behalf of itself, and the general public pursuant to Labor Code §2810. Labor Code §2810 prohibits persons or entities from entering into contracts or agreements for labor or services with a construction, farm labor, garment, janitorial, or security guard contractor where the person or entity knows or should know that the contract or agreement does not include funds sufficient to allow the contractor to comply with all applicable local, state, and federal laws or regulations governing the labor or services to be provided.

79. Under Labor Code §2810 an employee who is aggrieved by a violation of the law may file an action for damages to recover the greater of all of his or her actual damages or $250 per employee per violation for an initial violation and $1000 per employee for each subsequent violation. Upon prevailing in an action, the employee also may recover costs and reasonable attorney's fees.

80. Labor Code §90.5(a) sets forth the public policy of this State to enforce minimum labor standards vigorously, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain a competitive advantage by failing to comply with minimum labor standards.

81. Labor Code section 223 provides that "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

82. Defendant City of Los Angels knows or should have known that the contract entered into with subcontractors including a unionized employer Aviation Safeguards, did not provide sufficient funds to comply with California Labor Code minimum wage and the other living wage requirement.

//

//

//

PRAYER

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief:

1. Issue a permanent injunction prohibiting City of Los Angeles from enforcing the LWO in violation of the RLA.

2. Issue a permanent injunction prohibiting City of Los Angeles from enforcing the LWO in violation of the ADA .

3. Issue a permanent injunction prohibiting City of Los Angeles from enforcing the LWO in violation of the ERISA .

4. Issue a permanent injunction prohibiting City of Los Angeles from enforcing the LWO in violation of the Due Process.

5. Issue a permanent injunction prohibiting City of Los Angeles from enforcing the LWO in violation of the California Labor Code §§ 90.5(a), 223, and 2810.

6. Issue a judgment declaring that the LWO is preempted by the RLA.

7. Issue a judgment declaring that the LWO is preempted by the ADA.

8. Issue a judgment declaring that the LWO is preempted by the ERISA.

9. Issue a judgment declaring that the LWO is in violation of the Due Process.

10. Issue a judgment declaring that the LWO in violation of the California Labor Code §§ 90.5(a), 223, and 2810.

11. Issue a judgment declaring that the LWO supersession clause is preempted by the RLA.

12. Issue a judgment declaring that the LWO supersession clause is preempted by the ADA.

13. Issue a judgment declaring that the LWO supersession clause is preempted by the ERISA.

14. Issue a judgment declaring that the LWO supersession clause is in violation of the Due Process.

15. Issue a judgment declaring that the LWO supersession clause in violation of the California Labor Code §§ 90.5(a), 223, and 2810.

16. Award damages under 42 U.S.C. §1983 to compensate Calop Business Systems for the lost business profits as a result of the enforcement of the LWO.

17. Award costs and attorneys fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure §1021.5, and California Labor Code §2810.

18. Grant such other and further relief as this Court should find just and proper.

DEMAND FOR JURY TRIAL

Plaintiff Calop Business Systems, Inc. hereby demands a jury trial.

Dated: August 31, 2012

Respectfully submitted,

By: /s/ Juan Hong
Juan Hong
Attorney for Plaintiff
Calop Business Systems, Inc

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

**CV12- 7542 MMM (RZx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Juan Hong, A Law Corp. (SBN 234046)
Law Office of Juan Hong
4199 Campus Drive Suite 550
Irvine, CA 92612

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Calop Business Systems, Inc.<br><br>PLAINTIFF(S)<br>v.<br>City of Los Angeles, and DOES 1-10<br><br>DEFENDANT(S). | CASE NUMBER<br>CV12-7542-MMM(RZx)<br><br>SUMMONS |

TO: DEFENDANT(S):

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ __________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Juan Hong, whose address is Law Office of Juan Hong, 4199 Campus Dr. Ste. 550, Irvine, CA 92612. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: SEP - 4 2012

By: MARILYN DAVIS
Deputy Clerk

*(Seal of the Court)*

SEAL OF THE U.S. DISTRICT COURT CENTRAL DIST. OF CALIFORNIA 1227

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Calop Business Systems, Inc.

**DEFENDANTS**
City of Los Angeles, and DOES 1-10

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Juan Hong, A Law Corp. (SBN 234046)
Law Office of Juan Hong
4199 Campus Drive, Suite 550, Irvine, CA 92612

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No

☑ **MONEY DEMANDED IN COMPLAINT: $** to be determined

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Due Process, the ERISA, the ADA, the RLA, and the State Law

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☑ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: CV12-7542

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] Date August 31, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |